UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TURNING POINT CORPORATION, d/b/a Turning Point Consulting, | Case No. 24-cv-4566 (LMP/ECW) |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| ONE DIVERSIFIED, LLC, | |
| Defendant. | |

Chad McKenney and Brad Hendrikson, **Donohue McKenney, Ltd., Maple Grove, MN**, for Plaintiff.

O. Joseph Balthazor Jr., **Taft Stettinius & Hollister LLP, Minneapolis, MN**, and Marcus S. Harris and Elizabeth A. Winkowski, **Taft Stettinius & Hollister LLP, Chicago, IL**, for Defendant.

This matter is before the Court on Defendant One Diversified, LLC's ("One Diversified") Motion to Dismiss Count III of Plaintiff Turning Point Corporation's ("Turning Point") Amended Complaint. ECF No. 25. For the following reasons, the motion is denied.

## FACTUAL BACKGROUND

Turning Point is a consulting and project management company that contracted with One Diversified to provide "program management and system deployment services to improve [One] Diversified's business operations." ECF No. 17 ¶¶ 5, 7. Turning Point and One Diversified executed a Master Services Agreement ("MSA") in June 2023 that governed their contractual relationship. *Id.* ¶ 7.

Pursuant to the MSA and various service orders, Turning Point provided project management and system deployment services to One Diversified from June 2023 to September 2024, including implementing One Diversified's new target operating model and various software programs, such as NetSuite. *Id.* ¶¶ 7–10. However, according to Turning Point, One Diversified "caused numerous adjustments" to the services provided, which led to "numerous scope changes and project change orders which delayed the project timeline and increased costs." *Id.* ¶ 11. Specifically, Turning Point alleges that One Diversified diverged from its target operating model, modified its approach to the NetSuite system, removed the staffing and resources necessary to accomplish Turning Point's objectives, lacked the capacity and expertise to implement Turning Point's changes, failed to adhere to an agreed-upon testing schedule, and failed to adequately communicate with Turning Point throughout the implementation process. *Id.* ¶¶ 11–12; 31–32. According to Turning Point, One Diversified's conduct "significantly hinder[ed] the achievement of project deliverables" and led to a revised completion date of late 2024. *Id.* ¶¶ 12, 32.k.

Although Turning Point alleges that it "diligently perform[ed] its work" and "performed its obligations under the MSA," *id.* ¶¶ 12, 20, One Diversified ordered Turning Point to stop work on September 5, 2024, *id.* ¶ 32.l. One Diversified placed the blame for the delays on Turning Point and "claimed that there was no confidence in Turning Point's project management expertise." *Id.* ¶¶ 32.n–o. One Diversified informed Turning Point that it would be transitioning to another project management firm. *Id.* ¶ 32.m.

The MSA provided that One Diversified could either terminate the MSA without cause with 30-days' notice or that One Diversified could terminate the MSA for cause

"upon Turning Point's material breach of [the MSA], which has not been cured within thirty (30) days after notice of such breach and intent to terminate has been provided to Turning Point."[1] ECF No. 30-1 at 4. The MSA further requires One Diversified to "pay Turning Point for the services performed through the date of termination." *Id.*

On September 23, 2024, One Diversified informed Turning Point that Turning Point had materially breached the MSA and had failed to fulfill its contractual obligations. ECF No. 17 ¶ 15. One Diversified has accordingly refused to pay Turning Point $1,000,159.60 in unpaid invoices. *Id.* ¶¶ 13, 17. It is not clear from the pleadings whether One Diversified invoked the for-cause or without-cause termination provisions of the MSA, although Turning Point seems to allege that the MSA was terminated for cause. *Id.* ¶¶ 15–16.

Turning Point brought this action in Minnesota state court, and One Diversified removed the action to federal court, invoking the Court's diversity jurisdiction. *See* ECF No. 1. Turning Point alleges three causes of action. First, Turning Point alleges breach of contract for One Diversified's failure to pay $1,000,159.60 in outstanding invoices. ECF No. 17 ¶¶ 18–23. Second, Turning Point alleges an account stated claim in the same amount. *Id.* ¶¶ 24–27. Finally, Turning Point alleges that One Diversified breached the implied covenant of good faith and fair dealing. *Id.* ¶¶ 28–36. For that claim, Turning Point alleges that One Diversified's pre-termination conduct—such as One Diversified's frequent changes to the project's scope, delays, and mismanagement—hindered Turning

---

[1] The Court may consider the MSA on a motion to dismiss because it is "necessarily embraced by the complaint." *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (citation omitted).

3

Point's ability to successfully complete its work for One Diversified. *Id.* ¶ 33. Turning Point also alleges that One Diversified terminated the MSA in bad faith and with an "ulterior motive to thwart project completion" because One Diversified no longer wanted the bargain it struck with Turning Point. *Id.* ¶ 31. Turning Point seeks $1,000,159.60 in damages for its good faith and fair dealing claim. *Id.* ¶ 35.

One Diversified now moves to dismiss Turning Point's good faith and fair dealing claim. ECF No. 25. One Diversified does not seek to dismiss Turning Point's other two claims.

## ANALYSIS

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all of the factual allegations in the amended complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). The amended complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

One Diversified first argues that Turning Point's good faith and fair dealing claim must be dismissed because it is duplicative of Turning Point's breach-of-contract claim. ECF No. 26 at 3–5, 7 n.1. One Diversified also argues that Turning Point's good faith and fair dealing claim fails to plausibly allege that One Diversified's conduct caused Turning Point's damages. *Id.* at 3–5. Alternatively, One Diversified seeks to narrow Turning

4

Point's good faith and fair dealing claim, arguing that it cannot be held liable for exercising its contractual right to terminate the MSA. *Id.* at 5–7. Each of these arguments fails, as described below.

**I.      Whether Turning Point's Good Faith and Fair Dealing Claim is Duplicative of Its Breach-of-Contract Claim**

Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not "unjustifiably hinder" the other party's performance of the contract. *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995). Minnesota courts, however, do "not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim." *Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 256 (8th Cir. 1994). Accordingly, the implied covenant "serves only to enforce existing contractual duties, and not to create new ones." *Mayo Found. for Med. Educ. & Rsch. v. Knowledge to Practice, Inc.*, No. 21-cv-1039 (SRN/TNL), 2022 WL 409953, at *6 (D. Minn. Feb. 10, 2022) (citation omitted).

A claim for breach of the covenant of good faith and fair dealing is duplicative of a breach-of-contract claim, and is properly dismissed, if the claims are based on the "same conduct." *Ortega-Maldonado v. Allstate Ins. Co.*, 519 F. Supp. 2d 981, 992–93 (D. Minn. 2007); *see Mayo Found.*, 2022 WL 409953, at *6; *Clear Wave Hearing Instruments, Inc. v. Starkey Holding Corp.*, No. 11-cv-1562 (DWF/SER), 2012 WL 949953, at *10 (D. Minn. Mar. 20, 2012); *Constr. Sys., Inc. v. Gen. Cas. Co. of Wis.*, No. 09-cv-3697 (RHK/JJG), 2011 WL 3625066, at *9 (D. Minn. Aug. 17, 2011).

Turning Point's good faith and fair dealing claim is not premised on the "same conduct" as its breach-of-contract claim. *Ortega-Maldonado*, 519 F. Supp. 2d at 992–93. Turning Point's breach-of-contract claim is premised solely on One Diversified's failure to pay the outstanding invoices—which occurred after the termination of the MSA. ECF No. 17 ¶ 21. However, Turning Point's good faith and fair dealing claim is based on both pre-termination and post-termination conduct. Specifically, the amended complaint alleges that One Diversified "unjustifiably hinder[ed]" Turning Point's performance by diverging from its target operating model, shifting its approach to the NetSuite system, removing the staffing and resources necessary to accomplish Turning Point's objectives, lacking the capacity and expertise to implement Turning Point's changes, failing to adhere to an agreed-upon testing schedule, failing to adequately communicate with Turning Point throughout the implementation process, and failing to pay the outstanding invoices.[2] *See* ECF No. 17 ¶¶ 31–32; *see also Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d at 502. The good faith and fair dealing claim therefore relies on additional, pre-termination conduct by Turning Point, making that claim distinct from the breach-of-contract claim, which relies solely on post-termination conduct (that is, failure to pay the invoices alone).

---

[2]   Turning Point may not, however, premise its good faith and fair dealing claim on One Diversified's failure to pay the outstanding invoices, because that is the "same conduct" that forms the basis of Turning Point's breach-of-contract claim. *Ortega-Maldonado*, 519 F. Supp. 2d at 992–93; *see* ECF No. 17 ¶ 32.p. One Diversified also argues that premising a good faith and fair dealing claim on its termination of the contract is duplicative of the breach of contract claim. ECF No. 26 at 7 n.1. However, Turning Point does not allege that One Diversified breached the MSA by terminating it; rather, the alleged breach of contract occurred post-termination, when One Diversified failed to pay the outstanding invoices. As described later in this Order, Turning Point may premise its good faith and fair dealing claim on the alleged wrongful termination of the MSA.

The good faith and fair dealing claim is about more than unpaid invoices. Because the good faith and fair dealing claim "includes allegations of wrongful conduct beyond the conduct supporting the breach of contract claim," both claims may proceed at this stage.[3] *AGA Med. Corp. v. Beijing Since Med. Sci. Co.*, No. 06-cv-364 (JMR/FLN), 2007 WL 9734721, at *7 (D. Minn. May 24, 2007), *report and recommendation adopted*, 2007 WL 9734720 (D. Minn. Aug. 9, 2007).

## II. Whether Turning Point's Good Faith and Fair Dealing Claim Adequately Alleges Causation

A good faith and fair dealing claim should also be dismissed if there is no causal link between the breach of the covenant and the party's damages. *See Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 671–72 (8th Cir. 2012). To that end, One Diversified argues that Turning Point "fails to show how [One] Diversified's alleged 'unjustifiable hinderance' of the project . . . prevented [Turning Point] from performing under the contract and caused [One] Diversified to not pay the four invoices for completed work." ECF No. 26 at 5. Not so. According to Turning Point's amended complaint, One Diversified engaged in bad-faith conduct that led to "ongoing delays" and "hindered the successful completion" of Turning Point's work for One Diversified. ECF No. 17 ¶ 33. Then—so

---

[3] The Court recognizes that the good faith and fair dealing claim seeks the same amount of damages as the breach-of-contract claim: $1,000,159,60. *See* ECF No. 17 at 10. However, this does not mean that the two claims are duplicative, as they proceed upon different theories and are premised on different conduct. *See Ortega-Maldonado*, 519 F. Supp. 2d at 992–93. To the extent there are any concerns that allowing the good faith and fair dealing claim to proceed would lead to an impermissible double recovery for Turning Point, that issue can be appropriately addressed at a later juncture. *See Speed RMG Partners, LLC v. Arctic Cat Inc.*, No. 20-cv-609 (NEB/LIB), 2024 WL 4543340, at *5 n.6 (D. Minn. Oct. 17, 2024).

says Turning Point—One Diversified used those delays as an excuse to terminate the MSA and refuse to pay Turning Point for the outstanding invoices. *Id.* ¶¶ 15–17, 31, 33. Turning Point, therefore, draws a direct line between One Diversified's allegedly bad-faith conduct and Turning Point's damages.

Contrary to One Diversified's suggestion, *Cox* does not compel a different result. In *Cox*, a mortgage lender foreclosed on the plaintiffs' home, and the plaintiffs subsequently brought a good faith and fair dealing claim against the lender, asserting that the lender failed to respond to inquiries from the plaintiffs and wrongfully refused to release their loan file as the foreclosure advanced. 685 F.3d at 667, 671. The Eighth Circuit affirmed dismissal of the claim because although "the homeowners alleged that they suffered damages, [] they never alleged that the lender's actions prevented them from performing their responsibilities under the mortgage agreement, thereby causing their damages." *Id.* at 671.

Here, Turning Point explicitly alleges that One Diversified's "actions prevented [it] from performing [its] responsibilities under the [MSA]." *Id.*; *see, e.g.*, ECF No. 17 ¶¶ 31–33. And, but for One Diversified's actions that allegedly delayed and obstructed Turning Point's progress, One Diversified would not have had an excuse to terminate the MSA for cause and refuse to pay Turning Point's invoices. *See, e.g.*, ECF No. 17 ¶¶ 15–17, 31, 33. The causal link absent in *Cox* is sufficiently alleged here.

### III. Whether Turning Point May Premise Its Good Faith and Fair Dealing Claim on One Diversified's Termination of the MSA

One Diversified next makes a narrower argument: Turning Point's good faith and fair dealing claim cannot survive to the extent it seeks to impose liability for One Diversified's termination of the MSA. ECF No. 26 at 5–7. One Diversified observes that the MSA allows One Diversified to terminate the MSA with or without cause. ECF No. 26 at 6–7; *see* ECF No. 30-1 at 4. One Diversified consequently argues that its "exercise of its express contractual right to terminate with or without cause does not amount to a breach of the implied covenant of good faith and fair dealing." ECF No. 26 at 7.

Not quite. It is true that the decision to exercise an unconditional contractual right to terminate *without cause* does not give rise to a good faith and fair dealing claim. *See Crowell v. Campbell Soup Co.*, 264 F.3d 756, 765 (8th Cir. 2001); *Day Distrib. Co. v. Nantucket Allserve, Inc.*, No. 07-cv-1132 (PJS/RLE), 2008 WL 2945442, at *10 (D. Minn. July 25, 2008). But Turning Point alleges that One Diversified terminated the contract *for cause*, as One Diversified accused Turning Point of materially breaching the MSA. ECF No. 17 ¶¶ 15–16. Turning Point alleges that this termination for cause was done in bad faith because the justification for the termination was false and pretextual. *Id.* ¶ 31. And although One Diversified disputes Turning Point's allegation that One Diversified invoked the for-cause termination provisions of the MSA, ECF No. 35 at 4, the Court cannot resolve that factual dispute on a motion to dismiss, *see Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 663 (8th Cir. 2001). That is because the Court must accept the factual

9

allegations in the amended complaint as true and draw all reasonable inferences from those allegations in Turning Point's favor at this stage. *Gorog*, 760 F.3d at 792.

A good faith and fair dealing claim may be predicated on the wrongful repudiation of a contract. *See Cox*, 685 F.3d at 671 (citing *Wormsbecker v. Donovan Constr. Co. of Minn.*, 76 N.W.2d 643, 650 (Minn. 1956)). That is essentially the claim that Turning Point makes, so Turning Point may proceed with its claim in Count III that One Diversified terminated the MSA in bad faith.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that One Diversified's Motion to Dismiss (ECF No. 25) is **DENIED**.

Dated May 19, 2025					*s/Laura M. Provinzino*
						Laura M. Provinzino
						United States District Judge